UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| WANDA J. WRIGHT, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 15-2021 (RC) |
| NATIONAL RAILROAD PASSENGER CORPORATION *et al.*, | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

## I. INTRODUCTION

On September 18, 2015, Plaintiff Wanda J. Wright, appearing *pro se*, filed suit in the Superior Court of the District of Columbia against her former employer, the National Railroad Passenger Corporation ("Amtrak"), and her union, Amtrak Police Fraternal Order of Police New Jersey Lodge 189 ("FOP"). Plaintiff claimed that she was wrongfully terminated after sustaining work-related injuries and that FOP breached its duty of fair representation. Defendants properly removed the case to this Court, *see* Aug. 15, 2016 Order, ECF No. 19, and separately moved to dismiss. On March 27, 2017, the Court granted leave for Plaintiff to file an Amended Complaint invoking the Railway Labor Act ("RLA"), ECF No. 42, which was considered together with the original complaint. *See generally* Mar. 27, 2017 Mem. Op. ("Mem. Op. I"), ECF No. 41. The Court could not resolve on the sparse record (1) whether, as FOP argued, Plaintiff's breach-of-duty claim is time-barred, and (2) whether, as Amtrak argued, Plaintiff's admitted failure to exhaust her administrative remedies should be excused. Therefore, it denied both motions. *See id.* at 7-10.

Pending before the Court, following a period of discovery, are Amtrak's Motion for Summary Judgment, ECF No. 57, and FOP's Motion for Summary Judgment, ECF No. 58. Plaintiff has filed an opposition that addresses both motions, ECF Nos. 64, 65 (exhibits), and FOP and Amtrak have each filed a reply, ECF Nos. 67 and 68, respectively. The Court finds from the evidence in the record that Plaintiff's claim is timely but that no reasonable jury could find that FOP breached its duty of fair representation, which Plaintiff also must prove to succeed against Amtrak. Therefore, Defendants' motions will be granted for the reasons explained more fully below.

## II. BACKGROUND

### A. Plaintiff's Work-Related Injuries

Plaintiff began her employment as an officer of the Amtrak Police Department ("APD") on August 14, 2008, in the District of Columbia. FOP's Stmt. of Undisputed Material Facts ("FOP's Facts") ¶ 1, ECF No. 58-3. She sustained multiple back injuries while on duty. *See* FOP Facts ¶¶ 6-8; Amtrak Mem. at 10-11.[1] Amtrak documents that on February 22, 2011, plaintiff injured her back a third time while attempting to subdue a mentally ill patient and was granted Injury on Duty ("IOD") leave in accordance with Rule 27 of the Collective Bargaining Agreement ("CBA").[2] Amtrak Mem. at 10 (citing Ex. 6, Feb. 22, 2011 Employee Injury/Illness

---

[1] All page number citations are those assigned by the electronic case filing system.

[2] Paragraph 1 of Rule 27 of the CBA provides that a "police officer who sustains a disabling physical injury resulting from or occurring incident to [enumerated situations] shall be paid [her] regular pro rata compensation for a period not to exceed three months from the date of occurrence of such injury and 80 percent of [her] regular pro rata compensation until [her] return to duty, or for a period not to exceed an additional fifteen months." Amtrak Ex. 7, ECF No. 57-1 at 61; FOP Ex. 2.

2

Report); Ex. 8, Nov. 13, 2014 e-mail from Lisa Shahade).[3] "While on IOD, [Plaintiff] did not work as a full duty or as a restricted duty police officer" but, consistent with the CBA, "did . . . receive full pay for a total of three months and 80% pay for a total of 15 months." Amtrak Mem. at 10-11 (citing Ex. 16, Resps. to Reqs. for Admis. Nos. 10-13). Plaintiff remained on IOD leave through May 15, 2011. *Id*. at 11 (citing Shahade's Nov. 13, 2014 e-mail). She returned to work on May 16, 2011, "in a restricted duty capacity."[4] Mem. at 11.

While working on restricted duty, Plaintiff participated in a physical therapy program, which "revealed 'significant deficits' in several areas[.]" *Id*. (quoting Ex. 11 at 137, July 11, 2011 Functional Capacity Evaluation). "Per her physical therapist, [Plaintiff] complained of increasing back pain and tightness during testing [and] attempted 'to perform each task to a point where her pain had increased and was intolerable.' " *Id*. Plaintiff "failed" the program and was "returned to IOD" from July 18, 2011 until January 31, 2012. Amtrak Mem. at 12; FOP Facts ¶ 13. Upon returning to work in February 2012, Plaintiff was placed on restricted duty at a loading dock in Union Station. FOP Facts ¶¶ 12-14; Amtrak Mem. at 12. Plaintiff "attempted a second [rehabilitation] program" in July 2013. In the end, the physical therapist concluded that Plaintiff was " 'not capable of performing her pre-injury job in a full duty capacity.' " Mem. at 12 (quoting Ex. 12 at 152, July 16, 2013 Functional Capacity Evaluation). Plaintiff "was diagnosed with a permanent hip injury" in August 2013. FOP Facts ¶ 15. On October 2, 2013,

---

[3] Amtrak's exhibits (hereafter "Amtrak Ex. ___") appear in Document 57-1, ECF pp. 1-307.

[4] Amtrak documents that restricted duty is part of Amtrak's Right Care Day One program, which "is a voluntary transitional program designed to help injured employees continue working in a limited capacity. . . . Amtrak does not maintain separate positions for employees working in a restricted duty capacity. Thus, an employee working in a restricted duty capacity still occupies the same full duty, full pay police officer position that the employee held before being injured" but is "assigned duties that are in keeping with the employee's restrictions." Mem. at 11.

3

during Plaintiff's restricted duty assignment, Amtrak's Dr. Paul McCausland determined from his review of Plaintiff's medical file that she was no longer capable of performing the duties of an Amtrak police officer and "characterized her status as 'unlikely to change given her recent symptoms during work hardening and her continued restricted duty since 2011.'" Amtrak Mem. at 12 (quoting Ex. 14 at 169, Oct. 2, 2013 e-mail from Paul J. McCausland).

**B. Amtrak's Denial of Extended Restricted Duty**

On December 5, 2013, Amtrak denied Plaintiff's request to extend her restricted duty assignment by 60 days "pursuant to Amtrak Police Department (APO) Operations Guide section 310.7." FOP Facts ¶ 16; Amtrak Mem. at 4-5. The denial letter noted that Plaintiff had been "in restricted duty capacity for an extended period of time and the Department has authorized restricted duty service for several years." FOP Ex. 22 at 404[5]; Amtrak Ex. 15; Pl.'s Exs., ECF No. 65-1 at 2. The letter informed Plaintiff about seeking a reasonable accommodation if needed in order "to perform the essential functions of your position as a police officer," and listed Friday, December 13, 2013, as Plaintiff's "last day of approved restricted duty." *Id*. The letter further informed that "[e]ffective Monday, December 16, 2013," Plaintiff would be "returned to your prior status of Injured on Duty." *Id*. On the effective day, Plaintiff "stopped working and obtained IOD status" at 80% pay. FOP's Facts ¶ 18; Amtrak's Mem. at 13 (citing Ex. 8).

**C. Plaintiff's Request for FOP Assistance**

Meanwhile, on December 13, 2013, Plaintiff requested assistance from FOP President Valerie Sousa with appealing Amtrak's "denial of restricted duty." FOP Ex. 23 at 406. In a response dated December 30, 2013, Sousa, citing prior correspondence with Plaintiff, stressed

---

[5] FOP's exhibits (hereafter "FOP Ex. ___") appear in Document 59-1, ECF pp. 1-653.

4

that "the only appeal we can work on is the ADA denial if you were denied." *Id.*; *see also* FOP Facts ¶¶ 20-21 (recounting Sousa's request to Plaintiff to provide any application "to the ADA panel as well as the denial"). Sousa added: "As far as other complaint and grievance appeals – yes the Labor Committee prepares appeals. That is a big part of what we do." FOP Ex. 23 at 406. Plaintiff replied on Friday, January 3, 2014, that she had "called human resources several times to request a Request for Reasonable Accommodations form, but no one has returned my call." *Id.*, FOP Ex. 24 at 408. Sousa responded on Monday, January 6, 2014, that she would provide Plaintiff the form later that day. *Id*.

Plaintiff submitted an Americans with Disabilities Act ("ADA") Request for Reasonable Accommodation on February 20, 2014, which sought "same as previous. Restricted duty/administrative." FOP Ex. 25 at 414. By e-mail dated September 16, 2014, Amtrak's ADA Panel denied Plaintiff's request upon determining "that indefinite 'light/restricted duty' as a Police Officer would pose an undue burden."[6] FOP Ex. 28 at 425. Amtrak offered to "consider any reasonable accommodation(s) you may need to enable you to meet the essential functions of the Police Officer job, or to assist you with job reassignment within Amtrak." *Id*. On September 25, 2014, Plaintiff forwarded Amtrak's denial to Sousa, who replied thirty minutes later that "Amtrak will never agree to indefinite as a time period." *Id*. Sousa questioned "[h]ow the request [was] worded" and informed Plaintiff that "there does seem to be an opportunity to be successful with an appeal request," considering "whether or not you want to remain at APD or if

---

[6] Amtrak's denial of Plaintiff's ADA request is not before this Court for adjudication; it is referenced only as factual support for the breach of duty claim against FOP. *See* Mem. Op. I at 3, n.2 (noting that claims arising under the ADA are, in Plaintiff's words, "being heard in another jurisdiction"); Pl.'s Opp'n at 7-8 (Amtrak's alleged discriminatory application of restrictive duty policy and Amtrak's alleged "bad faith during Interactive Process" are each "the subject of another suit in another jurisdiction"); Amtrak Mem. at 9 (listing four other "legal actions that Wright is pursuing *pro se* against Amtrak").

there is another position within the corporation that could work to your benefit." *Id*. Both Amtrak and Sousa invited Plaintiff to "advise" of her preferences.

On September 29, 2014, Sousa resigned her position and "did not communicate with the new Union leadership about Wright's issues." FOP Facts ¶¶ 33-34. In an update to union members dated October 6, 2014, First Vice President Sharon Patterson informed that Sousa's resignation was unexpected, the Executive Board had called an emergency meeting to convene three days later, and "any member [who] was talking directly with President Sousa regarding a union issue that she was handling on your behalf" should contact her Regional Vice President by e-mail. FOP Ex. 34 at 509.

**D. Expiration of Plaintiff's IOD Status and Medical Disqualification**

On October 3, 2014, Amtrak notified Plaintiff that her IOD status (since December 16, 2013) would expire on October 10, 2014, and provided an ADA Accommodation Request form "should you wish to request some other accommodation." FOP Ex. 31 at 500. Amtrak followed up with a letter to Plaintiff dated October 14, 2014, confirming that her IOD leave had expired on October 10th "in accordance with Rule 27 of the collective bargaining agreement" and that her "final pay for this covered time period will be issued on October 24, 2014." FOP Ex. 37 at 515. The letter further conveyed that "Amtrak Medical Services has been notified of the expiration of your IOD time [and] will provide further information on your employment status." *Id*. In a letter to Plaintiff dated October 16, 2014, Medical Services referenced the Medical Director's determination "that you are medically disqualified from your job as a Police Officer" and set out "several options" for Plaintiff, which included applying for permanent disability through the Railroad Retirement Board; seeking other positions within Amtrak for which Plaintiff may be medically qualified to perform; applying for an accommodation through the ADA Panel; or

6

submitting medical documentation that "your medical condition has sufficiently improved to allow you to perform this job safely." FOP Ex. 38 at 517.

**E. FOP's Assistance**

In "early November 2014," Plaintiff contacted FOP Vice President Patterson "about the October 14 letter from Amtrak," FOP Facts ¶ 38 (citing Ex. 16), and an investigation ensued.[7] Patterson emailed Deputy Chief Lisa Ann Shahade on November 6, 2014, contesting the expiration date of Plaintiff's IOD status.[8] Shahade responded with an e-mail on November 13, 2014, listing the time periods that Plaintiff "was on paid IOD leave for a reported injury" and concluding that "the APD fulfilled its obligation to this officer under Rule 27." FOP Ex. 17 at 201. Shahade added: "As information, during the interim period of 1/31/12 to 12/16/13, the officer was assigned to a paid restrictive duty assignment (roughly 23 months)." *Id.* In an e-mail to Plaintiff also dated November 13, 2014, Patterson wrote: "We will definitely have to file a

---

[7] The document marked in this record as Exhibit 16, ECF No. 59-1 at 198-99, does not support FOP's asserted fact. FOP's apparent confusion is of its own making, as its exhibits have been marked more than once presumably for use in other proceedings. Regardless, the e-mail chain comprising the exhibit marked in this record as Exhibit 17, *id.* at 200-202, begins with an e-mail dated November 6, 2014, from Patterson to Shahade, stating that the union "was advised" that Plaintiff "was informed that her last paycheck from Amtrak . . . will be this pay period," which coincides with the October 14th letter. ECF No. 59-1 at 202.

[8] Plaintiff does not dispute that she "did not mention the [October 14, 2014] medical disqualification" letter at that time. FOP Fact ¶ 38. She testified at her deposition that "Amtrak had been in constant contact with me via e-mail, via telephone, and for whatever reason, this medical disqualification letter did not reach me," and she "was not aware of that medical disqualification until after 30 days from Amtrak." FOP Ex. 29 at 431, Dep. of Wanda J. Wright, 17:8-17. Amtrak notes, however, that the letter was mailed "to the correct address," and it surmises, based on an e-mail Plaintiff composed on November 21, 2014, that "it was apparently [Plaintiff's] practice at the time to refuse mail that she was not expecting." Amtrak Mem. at 16. In the e-mail, Plaintiff states: "I assume [Amtrak] attempted to mail me something via Fed Ex several weeks ago after they denied me ADA. However, since I got that ADA denial reminder via email, I didn't expect the same message via US mail. In addition to me not being home when Fed Ex has attempted to deliver, I DO NOT accept packages I am not expecting." Amtrak Ex. 27 at 212 (capitalization in original).

7

grievance on your behalf. Injury On Duty and Restricted Duty (Light Duty) are two different things." FOP Ex. 17 at 201. Noting that Plaintiff was "out on two [ ] injuries," Patterson asked Plaintiff "to meticulously outline for both injuries dates that you were out (not working) and dates you were working Light Duty" and to provide "supporting documentation[,] . . . a must to dispute management." *Id*.

In response to Plaintiff's inquiry on November 20, 2014, about her appeal and employment status, Patterson replied the next day: "We as the union don't start out with appeals. We are still looking into your case. The only recourse for the Union on your behalf is to file a grievance and request that you receive the remaining Line of Duty pay." FOP Ex. 40 at 519-20. Patterson summarized the discussion she and Pearlson had with Labor Relations, including that Plaintiff was "medically disqualified as a Police Officer in October 2014." *Id*. at 519. Patterson asked if Plaintiff had received the disqualification letter and concluded: "We need to speak to you face to face," *id*., which occurred on December 1, 2014, FOP Facts ¶ 47. The next day, on December 2, 2014, Plaintiff provided the union representatives "a more recent" report from her treating physician concluding that Plaintiff "could perform her duties with restrictions, 'no running, no [heavy] lifting.'" *Id*. ¶ 48 (quoting Ex. 44 at 534, Oct. 22, 2014 Treating Physician Medical Status Report, Statement of Disability).

On December 8, 2014, Pearlson sent Plaintiff a detailed "outline of a proposed grievance and evaluation of [the] merits of her case[,]" FOP's Facts ¶ 49, stating his intent to present his conclusions "to our labor attorney so I can file a grievance on your behalf[,]" Ex. 43 at 529. The gravamen of the proposal challenged Amtrak's removal of Plaintiff from approved restricted duty on December 13, 2013, its termination of Plaintiff's pay under CBA Rule 27 on October 24,

8

2014, and its calculation of Plaintiff's IOD time as running continuously from 2011.[9] Pearlson posited that each time Plaintiff "returned to work on a restricted duty capacity . . . caus[ed] a break in [her] IOD time" and thus "should have reset the clock [to] a full 18 months." *Id*. As a result, Plaintiff "should have 18 months of IOD from 12/16/13 when [she] was forced to return to IOD." Pearlson proposed to seek as a remedy Plaintiff's return to "IOD pay effective immediately" and "back pay from 10/14/14 until present." *Id*. Pearlson offered also that Plaintiff's reasonable accommodation request "was misplaced, as you were seeking a temporary accommodation, not a permanent one." *Id*. Therefore, he advised Plaintiff, among other things, to "recall" the accommodation request by writing to Amtrak Medical Services and asserting the error. *Id*.

Following Plaintiff's comments about the proposal on December 9, 2014, FOP Ex. 45, but before replying to her, *see* Ex. 47, FOP submitted Plaintiff's grievance on December 12, 2014, asserting violations of Rule 27 of the CBA. Ex. 46 at 540-49. The next day, Pearlson forwarded the grievance to Plaintiff and explained that the "initial grievance" was submitted to "ensure our argument is not time barred," since the "time limit expires tomorrow." FOP Facts ¶ 52 (quoting Ex. 47). Pearlson had calculated the time "based on the date of Assistant Chief Shahade's response to the FOP dated November 13, 2014." FOP Ex. 51 at 570.

Notwithstanding FOP's intent, Plaintiff's grievance was denied as time-barred. By letter dated January 8, 2015, Amtrak Police Department Inspector Kathleen Harasek found: (1) that Plaintiff's claim predicated on being "forced" from a restricted duty assignment on December

---

[9] According to APD records, Plaintiff received paid IOD leave based on the same injury for the following time periods: from February 23 to May 15, 2011; July 18 to August 31, 2011; August 31, 2011 to January 31, 2012; and December 16, 2013 to October 13, 2014. FOP Ex. 46, ECF 59-1 at 543.

9

16, 2013, "should have been filed within 30 days from the date of occurrence, or December 16, 2013. It was not"; and (2) that Plaintiff "was advised that her IOD time expired in written correspondence dated October 14, 2014 to her listed address. Any claim about additional IOD time should have been filed by mid to late November, 2014. It was not." FOP Ex. 48 at 554. Harasek explained that "[t]he FOP's request for information concerning the Department's actions does not alter contractually set time limits or 'restart' a filing time period. Rule 5 requires a claim or grievance to be filed within 30 days from the date of occurrence on which the claim or grievance is based." *Id*. As for the merits of the grievance, Harasek found that "no violation of Rule 27 in any manner, shape or form" had occurred, reasoning that Plaintiff "was paid, in accordance with parameters set by the Rule, for over 580 calendar days in addition to any approved restricted duty assignments. The FOP's assertion that another IOD time period is required is simply without Rule support." *Id*. Harasek further found that the CBA confers no right to restricted duty work, that such assignments are "designed as a transition to help police officers who expect to return to full duty within a period of 60 days," and yet Plaintiff "was on IOD time and restricted duty assignments for over 3.75 years." *Id*. at 555.

On January 13, 2015, FOP, having yet to receive Haresek's decision, appealed Plaintiff's grievance to Labor Relations in "accordance with the timelines outlined under Rule 5 of [the] CBA," Amtrak Ex. 35 at 233, and it met with Labor Relations on January 26, 2015, FOP Facts ¶¶ 56-57. "Amtrak maintained its position on the expired IOD," with which FOP's attorney eventually agreed was correct, FOP Facts ¶ 58, but "offered to allow [Plaintiff] to return to full duty or accept another position with Amtrak . . . outside the police department." *Id*. ¶ 57.

In a letter to Plaintiff dated April 24, 2015, Pearlson set out the actions FOP had taken on her behalf from December 1, 2014, when they first met to discuss Plaintiff's "work related

10

injury," to March 20, 2015, when Plaintiff advised of her intent "to return to work full duty with the Amtrak Police Department" but had yet "to provide the Amtrak Medical Department with the necessary documentation." FOP Ex. 51 at 570-71. Pearlson concluded:

> Currently, your grievance remains 'tabled' with labor relations, in essence Amtrak and the FOP agree to hold off on the issue. Based on your last statement to me, I am requesting you provide the Amtrak Medical Department with medical documentation that would return you to work. Should you not do so, within 30 days from the date of this letter, the FOP will consider this issue abandoned and withdraw your grievance. This does not preclude Amtrak's offer as stated in their medical disqualification letter to return you to work upon such time you can provide medical documentation with no restrictions.

*Id*. On April 30, 2015, Plaintiff replied: "In response to your recent statement and actions that have been executed by this union regarding my on-the-job injury case, I consider your actions to be an act of abandonment." FOP Ex. 58 at 590. Specifically, Plaintiff wrote,

> This union failed to represent me concerning my work related injury by not doing the following:
>
> • No grievance was filed on my behalf within 30 days (after December 5, 2013) concerning APD's decision to force me out on IOD status
>
> • No grievance was filed on my behalf within 30 days (after September 16, 2014) concerning the ADA panel's decision to deny my ADA request
>
> • No grievance was filed on my behalf within 30 days (after October 16, 2014) concerning Amtrak Medical Services' decision to medically disqualify me from my job as a police officer

*Id*. Plaintiff concluded: "I consider the last letter received from this union dated April 24, 2015 an official act of abandonment." *Id*. at 591. In a September 29, 2015 Memorandum addressed to members of Labor Relations and APD's Legal Advisor, Pearlson listed Plaintiff's grievance as one of thirteen "active grievances" the FOP had withdrawn "without prejudice to any future claims that may arise." FOP Ex. 59 at 593; Amtrak Ex. 54 at 307.

11

### F. Plaintiff's Claims

The allegations giving rise to this action are (1) that Amtrak "forced [Plaintiff] out of work and placed her on Injury on Duty status (IOD)" on December 5, 2013, and FOP refused to file a grievance on her behalf by January 5, 2014, Mem. Op. I at 2 (quoting Compl. ¶¶ 9-10); (2) that Amtrak denied Plaintiff's "request for reasonable accommodations on September 24, [sic] 2014," and FOP "refused to file a grievance on [her] behalf by October 24, 2014," *id*. (quoting Compl. ¶¶ 11-12); and (3) that Amtrak wrongfully terminated Plaintiff on October 16, 2014, "when it . . . medically disqualified [her] from her job as an Amtrak police officer," and FOP "refused to file a grievance on [her] behalf by November 16, 2014," *id*. (quoting ¶¶ 13-14).

### III. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. S*ee Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The inquiry under Rule 56 is essentially "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

The principal purpose of summary judgment is to determine whether there is a genuine need for trial by disposing of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See*

Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-movant may not rest upon mere allegations or denials but must instead present affirmative evidence. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (citing *Anderson*, 477 U.S. at 257).

In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007). All underlying facts and inferences must be analyzed in the light most favorable to the non-movant. *See Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not create a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## IV. ANALYSIS

### A. Statute of Limitations

Both defendants contend that Plaintiff's breach of duty claim is barred by the six-month limitations period applicable to claims brought under the RLA. *See* Mem. Op. I at 7. A claim premised on a union's breach of the duty of fair representation "accrues when the plaintiff knows, or should have known, that the grievance procedure has been exhausted or otherwise broken down." *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991); *see Hollie v. Smith*, 813 F. Supp. 2d 214, 220 (D.D.C. 2011) (the six months begin to run when the claimant " 'discovers, or in the exercise of reasonable diligence should discover, the acts that form the basis of [her] claim.' ") (quoting *McConnell v. Air Line Pilots' Ass'n, Int'l*, 763 F. Supp. 2d 37, 41 (D.D.C. 2011)).

13

When viewed in the light most favorable to Plaintiff, the evidence in the record does not support an untimely filing. It is virtually impossible to decipher from the conflated ADA, IOD, and restricted duty evidence just when or if "the [relevant] grievance procedure has been exhausted." *Meekins*, 946 F.2d 1057. But two documents establish when the process had "otherwise broken down." *Id.* Pearlson's April 24, 2015 letter to Plaintiff details the actions FOP had taken on her behalf from December 1, 2014, when they first met to discuss Plaintiff's "work related injury," to March 20, 2015, when Plaintiff advised of her intent "to return to work full duty with the Amtrak Police Department." FOP Ex. 51 at 570. FOP filed a grievance on December 12, 2014, "to protect the issue from being time barred based on the date of Assistant Chief Shahade's response to the FOP dated November 13, 2014." *Id.* Similarly, on January 13, 2015, FOP sought to preserve the grievance by appealing it to Labor Relations after having not heard from Harasek within the CBA's timelines. *See* Amtrak Ex. 35 at 233. The grievance covered the IOD and restricted duty issues, as well as Plaintiff's ADA accommodation request to extend the restricted duty assignment. *See* FOP Ex. 48 at 554-55; Ex. 51 at 570. Pearlson informed Plaintiff that "[c]urrently, your grievance remains 'tabled' with labor relations, in essence Amtrak and FOP agree to hold off on the issue." FOP Ex. 51 at 571. He concluded:

> Based on your last statement to me, I am requesting you provide the Amtrak Medical Department with medical documentation that would return you to work. Should you not do so, within 30 days from the date of this letter [by May 24, 2015], the FOP will consider this issue abandoned and withdraw your grievance.

*Id.* But on April 30, 2015, Plaintiff conveyed her interpretation of FOP's April 24, 2015 letter as abandoning her grievances as to "APD's decision to force me out on IOD status," the ADA Panel's denial of her "ADA request," and "Amtrak Medical Services' decision to medically disqualify me from my job as a police officer." FOP Ex. 58 at 590. Those documents show that the grievance proceedings broke down at the earliest on April 24, 2015, which renders Plaintiff's

14

filing in D.C. Superior Court five months later, on September 18, 2015, timely as a matter of law. Consequently, Defendants' motions for summary judgment based on the six-month statute of limitations are denied.

**B. Breach of the Duty of Fair Representation**

FOP contends that the record contains no evidence that it breached the duty of fair representation. FOP's Mem. at 23-38. Amtrak contends that in the absence of such evidence, no claim survives against it as the employer. Amtrak's Mem. at 22-26.[10] The Court agrees with both arguments.

The Court of Appeals explained long ago that "the duty of fair representation and fiduciary duty impose no obligations on the employer," but "an employer may sometimes be joined in a suit involving duty of fair representation claims against a union" if, for example, the employer violates the CBA or "knowingly acquiesces to union pressure and takes discriminatory action against an employee[.]" *Am. Postal Workers Union, AFL-CIO, Headquarters Local 6885 v. Am. Postal Workers Union, AFL-CIO*, 665 F.2d 1096, 1108-09 (D.C. Cir. 1981). Because, as discussed next, the record contains no evidence from which a reasonable jury could find or infer that FOP breached its duty, the Court finds that both defendants are entitled to judgment as a matter of law, thereby rendering the exhaustion question moot.[11] *See Long v. Safeway, Inc.*, 842

---

[10] Although Amtrak has styled its argument as lacking subject matter jurisdiction "to hear Wright's minor dispute," Mot. at 2, it has not sought reconsideration of the Court's initial ruling that differentiated Plaintiff's hybrid claim against the union and employer -- over which district courts may exercise jurisdiction -- from a union and union member/employee's claim against the employer -- over which the National Railway Adjudication Board would have exclusive jurisdiction. *See* Mem. Op. I at 5-7.

[11] In her opposition, Plaintiff asserts wrongly that because the Court accepted her factual assertions as true when deciding the motion to dismiss, it "is now undisputed that [FOP] failed to grieve" the decisions at issue. Opp'n at 11; *see* Mem. Op. I at 10 and n.4 (explaining that the

F. Supp. 2d 141, 147 (D.D.C.), *aff'd*, 483 F. App'x 576 (D.C. Cir. 2012) ("The granting of Local 400's motion to dismiss based on plaintiff's failure to state a breach of duty claim necessarily defeats plaintiff's federal claim against Safeway."); Mem. Op. I at 9-10 (Plaintiff sought to be excused from the exhaustion requirement "because Defendants breached its duty of fair representation in processing [her] claims.").

"The core requirement of the duty of fair representation is that a union must 'represent all members fairly.'" *Ruisi v. Nat'l Labor Relations Bd.*, 856 F.3d 1031, 1035 (D.C. Cir. 2017) (quoting *Marquez v. Screen Actors Guild*, 525 U.S. 33, 44 (1998)). A breach of duty "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). The Supreme Court has observed:

> There has been considerable debate over the extent of this duty in the context of a union's enforcement of the grievance and arbitration procedures in a collective bargaining agreement . . . . Some have suggested that every individual employee should have the right to have his grievance taken to arbitration. Others have urged that the union be given substantial discretion (if the collective bargaining agreement so provides) to decide whether a grievance should be taken to arbitration, subject only to the duty to refrain from patently wrongful conduct such as racial discrimination or personal hostility.

*Id*. While "accept[ing] the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion," the Court disagreed "that the individual employee has an absolute right to have [her] grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." *Id*. at 191. Therefore, "a union does not have to advance . . . every grievance of its members. It possesses discretion to pursue

---

Court is required to accept the allegations as true "at this stage" where the sole question is whether a claim has been stated sufficiently to move forward).

16

only those grievances it fairly considers to be meritorious." *Lewis v. Greyhound Lines-E.*, 555 F.2d 1053, 1055 (D.C. Cir. 1977). Indeed, a union's outright refusal to assist a member with pursuing a grievance does not create "a genuine dispute supporting [an] allegation" of a breach if the decision is "carefully explained" and lacks indicia of arbitrariness, discrimination, or bad faith. *Linke v. Ass'n of Flight Attendants, AFL-CIO*, 52 F. App'x 519, 520 (D.C. Cir. 2002) (per curiam).

Plaintiff argues first that FOP acted in bad faith and second that FOP discriminated against her based on her "sexual orientation as a lesbian." Opp'n at 5-8. The record contains evidence of neither. A "union commits a bad faith violation of the duty of fair representation when it engages in 'fraud, or deceitful or dishonest action.' " *Ruisi*, 856 F.3d at 1038 (quoting *Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers v. NLRB*, 41 F.3d 1532, 1537 (D.C. Cir. 1994)). A union's discriminatory conduct constitutes a breach only if it is "invidious," *i.e.*, "'discrimination that is intentional, severe, and unrelated to legitimate union objectives.'" *Id.* (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)). The burden lies with the plaintiff "to show a threshold level of such ill-motive . . . to support [her] claim. Mere conclusory allegations, requiring the Court to infer bad faith [or discrimination] from seemingly innocuous facts, are insufficient to meet this standard." *Lewis v. No. 1 Greyhound Lines-E.*, 411 F. Supp. 368, 370 (D.D.C. 1976), *aff'd sub nom. Lewis v. Greyhound Lines-E.*, 555 F.2d 1053 (D.C. Cir. 1977) (citing *Balowski v. International U., United A., A. & A. Imp. Wkrs.*, 372 F.2d 829 (6th Cir. 1967); *Lusk v. Eastern Products Corp.*, 427 F.2d 705 (4th Cir. 1970)). And evidence of a union's "mere negligence" will not defeat summary judgment. *Harris v. Amalgamated Transit Union Local 689*, 825 F. Supp. 2d 82, 86 (D.D.C. 2011) (citation and internal quotation marks omitted).

Plaintiff has adduced no evidence of bad faith to present to a jury. During her deposition, Plaintiff could identify nothing that FOP had done to support her allegations of bad faith or discrimination.[12] *See* FOP Ex. 29 at 467-68, Oct. 19, 2017 Wright Dep. at 161:11-163:6. While admitting to having received "more discovery" since previous inquiries about her bad faith claim, *id.* at 161:11-16, Plaintiff implied that she had not received proper responses to her "requests" and repeatedly "apologize[d]" for being unable to "honestly" state her bases of bad faith and discrimination. Dep. at 163:3-5. In her opposition under the section addressing exhaustion, however, Plaintiff asserts that Amtrak "refused to Answer [her]interrogatory No. 15, . . . asking if [Amtrak] has [a]written policy on medical disqualification as it relates to APD police officers" and surmises that if it had, Amtrak "would have not objected to this question" as irrelevant " 'to this action.' " Pl.'s Opp'n at 12 (citing Amtrak's Supp. Answers & Objections to Wanda Wright's Interrogatories). Plaintiff does not tie that question to her inability to provide a factual basis in support of her claims of bad faith and discrimination against FOP, and the Court discerns no such connection. Moreover, Plaintiff has not cited any testimony in her deposition that identifies what other discovery she needed to support such allegations.

---

[12] FOP notes that Plaintiff did not raise discrimination until her "second opposition to [its] motion to dismiss," FOP Reply at 10, and "[i]t is well established that a party may not amend its complaint or broaden its claims through summary judgment briefing," *District of Columbia v. Barrie*, 741 F. Supp. 2d 250, 263 (D.D.C. 2010). Regardless, Plaintiff has adduced no evidence that even remotely connects FOP's decisions with her sexual orientation, let alone evidence of intentional discrimination, to survive summary judgment. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Where the claim is invidious discrimination . . . , our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose.") (quoting *Personnel Administrator. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)); *Celotex*, 477 U.S. at 322 (when "after adequate time for discovery and upon motion [a party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the Court may properly grant summary judgment against that party). All of Plaintiff's allegations of discrimination or harassment based on her sexual orientation concern claims against Amtrak employees, not the FOP representatives she now claims discriminated against her.

By contrast, the record is replete with evidence of FOP's prompt and diligent efforts to obtain a remedy for Plaintiff. As set out above in Part II, shortly after Plaintiff contacted FOP in early November 2014, Patterson emailed Deputy Chief Shahade to contest the expiration date of Plaintiff's IOD status, asserting: "If Officer Wright was returned to IOD" on December 16, 2013, "then she should continue to receive payment until June 2015" at 100 percent from "December 16, 2013 to March 2014" and at 80 percent for fifteen months, "April 2014 to June 2015." Amtrak Ex. 8 at 117. After Shahade provided the dates from APD's records that Plaintiff "was on paid IOD leave for a reported injury" and otherwise "assigned to a paid restrictive duty assignment (roughly 23 months)," FOP's Ex. 46 at 543, Patterson promptly informed Plaintiff that IOD and restricted duty "are two different things" and that FOP "will definitely have to file a grievance on your behalf." FOP Ex. 17 at 201.

In addition, Patterson and Union Secretary David Pearlson met with Amtrak's Labor Relations Department on November 17, 2014, to discuss Plaintiff's case, FOP Facts ¶ 42, provided Plaintiff a detailed written analysis of the merits of her case and a proposed grievance on December 8, 2014, FOP Facts ¶ 49 (quoting Ex. 43), and filed the grievance on December 12, 2014, in what it had calculated in good-faith to be a timely manner. The grievance sought as remedies (1) Plaintiff's "immediate return to IOD pay," (2) back pay from December 16, 2013 "to make her whole in accordance with Rule 27," and (3) Plaintiff's "return to restricted duty and payment of medical bills among other relief." FOP Ex. 48 at 554. Before receiving Haresek's adverse decision, FOP sought to preserve the grievance by appealing it to Labor Relations in "accordance with the timelines outlined" in CBA Rule 5, and then continued to press Plaintiff's concerns with Labor Relations. FOP urged Plaintiff to provide the necessary medical

19

documentation to Labor Relations to enable her return to work as she desired. *See* FOP Ex. 51 and Facts ¶¶ 56-59.

No reasonable jury presented with the foregoing evidence could find for Plaintiff on the breach of duty claim. Nor is there any evidence of a breach of the CBA. Accordingly, both Defendants are entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court grants the motions of Amtrak and FOP for summary judgment and enters judgment accordingly. A separate order accompanies this Memorandum Opinion.

_____/s/_____
RUDOLPH CONTRERAS
Date: September 17, 2018    United States District Judge